# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:12-CR-00088-MR-DLH-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ) | |
| ALEX DEAN NELSON, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| ) | |
| IN RE: PETITION OF ) | |
| TAMMY NELSON. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Government's Motion [Doc. 30] to dismiss the Claim [Doc. 28] of Tammy Nelson ("Petitioner") which seeks modification of a preliminary order of forfeiture [Doc. 12]. Following defendant Alex Dean Nelson's guilty plea in this matter to public corruption charges, the Magistrate Judge entered a preliminary order of forfeiture pertaining to certain property. Nelson's wife, Petitioner, has petitioned the Court to modify the preliminary order to exclude assets in which she claims an interest. For the reasons that follow, the Government's Motion to dismiss Petitioner's Claim will be denied.

**PROCEDURAL BACKGROUND**

Alex Dean Nelson ("Nelson") and Bradley Dale Adkins ("Adkins") were named in a three-count Information filed herein by the U.S. Attorney on September 14, 2012. [Doc. 1]. The Government alleged that, from in or about June 2009 through in or about June 2012, defendants executed a public corruption scheme to embezzle and steal from the Foothills Regional Airport in Morganton, North Carolina ("Airport"), and its customers. According to the Information, the Airport was funded by federal, state, and local governments, and received in excess of $10,000 in federal money for every one-year period material to the allegations contained in the Information. [Id.] Nelson was the Airport's Administrator, its top official, and Adkins was its Operations Manager. [Id.] Count One charged the defendants with an 18 U.S.C. § 371 conspiracy, the object of which was to embezzle money and property from a federally funded organization (the Airport) in violation of 18 U.S.C. § 666. Count Two charged the defendants with the substantive offense of embezzling money and property worth at least $5,000 from a federally funded organization (the Airport) in violation of 18 U.S.C. § 666. Count Three charged Nelson alone with money

laundering in violation of 18 U.S.C. § 1956(a)(1). Finally, the Information contained a forfeiture provision which, in pertinent part, stated:

> 17. The following property is subject to forfeiture on one or more of the grounds stated above:
>
> a. any and all currency and monetary instruments that were received during, involved in, or used or intended to be used to facilitate the crimes alleged in this bill of information, including but not limited to the sum of approximately $130,000.00 in proceeds and funds involved in the alleged violations.
>
> b. 2006 Ford Expedition, VIN: 1FMPU18586LA13977.
>
> c. 2008 Mercedes C300, VIN: WDDGF54X78F075326.
>
> d. Sun Tracker Party Barge 25 pontoon boat with Mercury 115 motor.
>
> e. 2001 Chevrolet Corvette convertible, VIN 1G1YY32G615100723.

[Doc. 1 at 7].

Pursuant to a written plea agreement [Doc. 2], Nelson pleaded guilty to the charges contained in the Information on September 24, 2012, before Magistrate Judge Dennis Howell. [Doc 10]. That same day, Magistrate Judge Howell entered a consent order, preliminary judgment of forfeiture, and order for substitute assets pursuant to 21 U.S.C. § 853(p). [Doc. 12].

This order forfeited the following property pending final adjudication by this Court:

> A $130,000 forfeiture money judgment, such amount constituting the proceeds of the 18 U.S.C. § 371 and 18 U.S.C. § 666(a)(1)(A) offenses to which Defendant pled guilty in the Bill of Information; and
>
> The following specific property, forfeited in partial satisfaction of the $130,000 forfeiture money judgment:
>
>> The real property at at [sic] 4640 Celia Creek Road, Lenoir, NC 28645, further described in a deed recorded in the Caldwell County, North Carolina Register of Deeds Office, Deed Book 1539, Page 1201-1203; 1204-1208;
>>
>> Sun Tracker Party Barge 25 pontoon boat with Mercury 115 motor, both seized during the investigation;
>>
>> 2006 Ford Expedition, VIN:1FMPU18586LA13977, seized during the investigation; and
>>
>> 2001 Chevrolet Corvette convertible, VIN 1GIYY32G615100723, seized during the investigation.

[Doc 12 at 1].

On February 7, 2013, Petitioner filed a pro se Claim[1] asserting that she had an interest in the real property located at 4640 Celia Creek Road,

---

[1] Petitioner originally mailed her Claim to the Government within the time period permitted for filing the same with the Court. The Government notified Petitioner of her error in not filing her Claim with the Court and advised Petitioner it would not object to an extension of time within which Petitioner could properly file her Claim with the Court. [Doc. 30 at 4].

and in the tangible property preliminarily ordered forfeited. [Doc. 28]. The Government responded by filing its "Motion to Dismiss Petition." [Doc. 30]. With the assistance of counsel, Petitioner filed a response to the Government's dismissal motion. [Doc. 32]. In turn, the Government filed a reply to Petitioner's response. [Doc. 33].

Now that the parties have briefed their respective positions, the issues raised in the Government's motion to dismiss Petitioner's Claim are ripe for the Court's consideration.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 32.2(c)(1)(A) provides that "[i]n the ancillary proceeding [which commences upon a third party's filing of a petition claiming an interest in forfeited property], the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." This procedure "is treated like a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." United States v. Grossman, 501 F.3d 846, 848 (7th Cir. 2007).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a party's allegations, treated as true, are required to contain "enough facts to

state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). On the one hand, the claim need not contain overly "detailed factual allegations[.]" Id. at 555.  On the other hand, however, "a formulaic recitation of the elements of a cause of action will not do[,]" nor will mere labels and legal conclusions suffice. Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [she is entitled to the relief she seeks for the reasons alleged.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The mere possibility that a plaintiff is entitled to relief is not sufficient for a claim to survive a motion to dismiss.  Twombly, 550 U.S. at 570.  The touchstone, therefore, is plausibility and not possibility.

**FACTUAL BACKGROUND**

The Government's Information recites that, from in or about June 2009 through in or about June 2012, defendants executed a public corruption scheme to embezzle and steal from the Airport and its customers. [Doc. 1].  According to the statements contained in Petitioner's Claim, which the Government does not contest at this stage [Doc. 30 at 10], and the Court assumes to be true pursuant to Rule 32.2(c)(1)(A), Petitioner used her individual funds to purchase and install the swimming

6

pool on Nelson's property at 4640 Celia Creek Road, Lenoir, North Carolina [Doc. 28-1 at 18, 21-22, 26-32], and to purchase the Sun Tracker pontoon boat [Doc. 28-1 at 18-19], the 2006 Ford Expedition [Doc. 28-1 at 18, 20], and the 2001 Corvette [Doc. 28-1 at 10-12]. Petitioner explains that, at the time she made these purchases, she and Nelson were married for only one year, she was finalizing her property settlement dispute with her ex-husband, and based upon the advice of her attorney, she was to place all personal property she purchased in Nelson's name. [Doc. 28 at 2].

Petitioner purchased the Sun Tracker pontoon boat on May 19, 2009 [Doc. 30-2 at 3], by check dated May 18, 2009 [Doc. 28-1 at 19]. She purchased the 2006 Ford Expedition and the 2001 Corvette on or about May 20, 2009, pursuant to checks dated that day [Doc. 28-1 at 12, 20]. These three vehicles were thereafter listed or titled in Nelson's name. [Docs. 30-2, 30-3, 30-4]. With regard to the swimming pool on Nelson's property, Nelson contracted with Carolina Pool Builders on June 9, 2009, to construct such pool. [Doc. 28-1 at 22]. Petitioner thereafter paid for the pool installation by three checks made payable to Carolina Pool Builders

7

and dated, respectively, June 10, 2009 [Doc. 28-1 at 21]; June 27, 2009 [Doc. 28-1 at 29]; and July 28, 2009 [Doc. 28-1 at 32].

## ANALYSIS

A third party who asserts an interest in forfeited property may petition the Court for a hearing to adjudicate the validity of that interest. 21 U.S.C. § 853(n)(2). The Court must amend the preliminary forfeiture order if the petitioner can show by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6)(A)-(B).

Resolution of the Government's motion centers on whether Petitioner has standing to challenge the forfeiture order. The Government argues "Petitioner cannot prevail as a matter of law because she does not have an interest in the assets sufficient to establish standing or state a claim for the

8

purposes of Section 853(n)." [Doc. 30 at 10]. Thus, in order to withstand the Government's motion to dismiss, the Petitioner's Claim must plausibly show: (1) that she had a legal or equitable interest in the forfeited property, United States v. Bryson, 406 F.3d 284, 286 (4th Cir. 2005), and (2) that such interest was either vested or superior to Nelson's interest in the forfeited property at the time of the commission of the acts which gave rise to the forfeiture. United States v. Oregon, 671 F.3d 484, 491 (4th Cir. 2012). Although forfeiture is an issue of federal law, courts generally refer to the law of the state that created the property right to determine what interests, if any, the claimant has in the forfeited property. Id. at 490; United States v. Schecter, 251 F.3d 490, 494 (4th Cir. 2001). But, as the Government correctly points out, while the "norm" is to consider state law [Doc. 30 at 11], the Fourth Circuit has departed from state law when circumstances so require. This matter is one such case.

The Government asserts that Petitioner has no interest in any of the forfeited property because Nelson is either listed as the sole owner (the boat), the sole title holder (the Expedition and Corvette), or the sole grantee on the deed (4640 Celia Creek Road property). The Government errs in this regard by equating one's nominal ownership of property with one's

9

legal or equitable interest in property. To prevent manipulation of ownership by criminals seeking to thwart forfeiture proceedings, the Fourth Circuit has directed the district courts to "look beyond bare legal title" and examine the underlying facts. Bryson, 406 F.3d at 291. The rationale for this approach is found in the legislative history of the forfeiture statute.

> The intent of Congress in enacting the forfeiture provisions of § 853 was to "strip these offenders [racketeers and drug dealers] and organizations of their economic power." S. Rep. No. 225, reprinted in 1984 U.S.C.C.A.N. 3182, 3374. Therefore, Congress noted that § 853(n)(6) "should be construed to deny relief to third parties acting as nominees of the defendant or who knowingly engage in sham or fraudulent transactions." S. Rep. No. 225, supra at 3392 n. 47. In order to effectuate the legislative purpose of the statute, courts must evaluate whether the petitioner is a nominee when reviewing the substance of a § 853(n) claim.

United States v. Morgan, 224 F.3d 339, 343 (4th Cir. 2000) (footnote omitted). The negative implication of this passage must be that Congress would encourage the courts to "look beyond bare legal title" in an effort to prevent innocent third parties from having their property — nominally titled in a criminal defendant's name — seized as a part of the defendant's criminal punishment.

Ironically, the Government has successfully employed this "look beyond bare legal title" approach when it sought forfeiture of property in

cases where a third-party petitioner had been the nominee recipient of a criminal defendant's goods. See, e.g., Bryson, 406 F.3d at 291 (defendant's son was only nominee owner of real property actually belonging to and controlled by defendant); Morgan, 224 F.3d at 345 (defendant's wife was only nominee owner of bank certificate of deposit actually purchased by defendant using his own funds). With the shoe squarely on the other foot, the Government cannot now be heard to complain when a claimant like Petitioner plausibly alleges that the criminal defendant is merely the nominee owner of property she supplied her own funds either to purchase or to improve. Petitioner has pleaded facts sufficient to establish her interest in all of the preliminarily forfeited substitute property.

Having concluded Petitioner has sufficiently alleged an interest in the substitute property, the Court must now determine whether she has alleged facts plausibly establishing whether her interest was either vested or superior to Nelson's interest in the forfeited property at the time of the commission of his corrupt acts. Oregon, 671 F.3d at 491. Nelson has admitted that his embezzlement from the Airport began in or around June 2009. All of the vehicles Petitioner alleges to have purchased were

acquired in May 2009, before Nelson's criminal acts began. Further, Petitioner's Claim sets forth facts showing that the source of the funds she used to purchase the vehicles, and to install the pool on Nelson's property, originated from her various bank accounts separate and apart from Nelson long before June of 2009. Petitioner therefore argues her interest in the forfeited property was either vested or superior to Nelson's interest at the time of his offense. The Government is unfazed by Petitioner's assertions and maintains in its Reply [Doc. 33] that she has no interest, and hence no vested or superior interest, in the substitute properties to pursue her Claim because the "Government has submitted title documents which reflect that the forfeited properties are 'property of the defendant' – all of the properties are titled solely in the name of the Defendant. Petitioner has not disputed the authenticity of such title documents." [Id. at 2]. While there is something to be said for the Government's consistent approach, it errs yet again in this regard by equating one's titled ownership of property with one's vested interest in property.

To be clear, under North Carolina common law, Petitioner has an interest in Nelson's land, more specifically an equitable lien, to the extent

that her separate funds improved his real property and were not a gift.[2]

Fulp v. Fulp, 264 N.C. 20, 140 S.E.2d 708 (1965); Burrowes v. Nimocks, 35 F.2d 152 (4th Cir. 1929).

> An equitable lien, or encumbrance, is not an estate in land, nor is it a right which, in itself, may be the basis of a possessory action. It is simply a charge upon the property, which charge subjects the property to the payment of the debt of the creditor in whose favor the charge exists.

Fulp, 264 N.C. at 24, 140 S.E.2d at 712. Petitioner's charge upon Nelson's property vested upon her giving over funds to Nelson for improvements to his home or land and the use of those funds in improving the land, and Petitioner can enforce her equitable lien, for example, by means of a civil action against the property itself.

> In an equitable lien there is a legal estate with possession in one person, and a special right *over* the thing held by another[.] … This special right is not an *estate* of any kind; it does not entitle the holder to a conveyance of the thing nor to its use; it is merely a right to secure the performance of some outstanding obligation, by means of a proceeding directed against the thing which is subject to the lien.

Id. at 24-5, 140 S.E.2d at 712-3.

---

[2] Petitioner's separate money used both to improve Nelson's real property and to acquire the preliminarily forfeited vehicles, was not alleged by her to be a gift to Nelson. Her Claim, quite candidly, recited that, "[d]ue to the ongoing property battle with my ex-husband, I was advised by my attorney at the time, …, to put all newly purchased property in my current husband's name, which is Alex Dean Nelson." [Doc. 28 at 2].

Similarly, Petitioner has an interest in all of the preliminarily seized vehicles since she is the beneficiary of a resulting trust for all purchase money proceeds she provided for the acquisition of the vehicles. Bullman v. Edney, 232 N.C. 465, 61 S.E.2d 338 (1950).

> And it is a well settled principle that where, on the purchase of property, the conveyance of the legal estate is taken in the name of one person, but the purchase money is paid by another at the same time or previously, and as a part of one transaction, a trust results in favor of him who supplies the purchase money.

Id. at 467, 61 S.E.2d at 340. When Petitioner used her separate funds to buy the boat, Expedition, and Corvette, a trust resulted at that time in the amount of her funds supplied as purchase money for the vehicles. Thereafter, as a vested beneficiary, she could maintain an action for partition of the property, or if the same were no longer available, an action for conversion.

> Ordinarily a tenant in common in personalty is entitled to partition of the property. … However, if plaintiff prevail in establishing an interest in the automobile, and if, as stipulated by the parties, the automobile be not available for sale for partition, and the rights of the parties be not otherwise provided for in the 'bond posted' by defendant, the evidence contained in the record tends to show facts which would support a claim for conversion.

Id. at 468, 61 S.E.2d at 340.  With regard to both the real and personal property subject to the preliminary order of forfeiture in this matter, taking Petitioner's allegations as true, her vested interest is superior to that of Nelson, and by extension, to that of the Government. See Oregon, 671 F.3d at 491 (the Government steps into a criminal defendant's shoes and acquires only that interest held by a defendant, and no more, in property subject to a preliminarily order of forfeiture).

In its final argument to terminate this proceeding at the pleadings stage, the Government notes that Nelson, pursuant to his Plea Agreement, is obligated to give truthful testimony in this matter.  Nelson is on record for having stipulated that his ill-gotten gains were used to install the pool at his home [Doc. 30 at 5], that the boat constitutes forfeitable substitute property [Doc. 30 at 6], and that the two remaining vehicles are titled in his name [Doc. 30 at 6-7].  The implication drawn from the Government's argument is that a factual dispute exists between Nelson and Petitioner regarding the source of funds used to build the pool and to acquire the vehicles, and that Nelson's version of events must prevail as a matter of law.  The Government's argument is misplaced for two reasons.

First, at this stage of the proceedings, the Court's duty is to determine Petitioner's standing and whether she has made a threshold plausible allegation that she has a sufficient interest in the property such that she may be entitled to a modification of the preliminary forfeiture order. The Government's argument thus confuses the Court's initial gate-keeping function with its adjudication obligation slated to occur later in the proceeding. Oregon, 671 F.3d at 488 ("As relevant here, the district court must first consider any motion by the United States to dismiss the petition for lack of standing before moving to the merits of the petition."). Second, to the extent the Government argues that Nelson's stipulations somehow trump Petitioner's allegations, the Government's argument misses the mark. In testing Petitioner's Claim, the Court looks to the facts alleged by Petitioner, not the admissions made by defendant, in conducting its plausibility analysis. "For purposes of the motion, the facts set forth in the petition are assumed to be true." Fed.R.Crim.P. 32.2(c)(1)(A). More fundamentally, however, due process dictates that a criminal defendant's admissions occurring as a part of his guilty plea or trial do not have, nor can they have, any decisive influence over the statements made by a forfeiture petitioner in her claim filed after the defendant's conviction. See

United States v. Reckmeyer, 836 F.2d 200, 206 (4th Cir. 1987) ("The determination made at the defendant's criminal trial that the property was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening."). The Government has presented no legal authority to the contrary.

Assuming the truth of the facts set forth in Petitioner's Claim as the Court must, she has plausibly asserted that she had a legal or equitable interest in the preliminarily forfeited property and that such interest was either vested or superior to Nelson's interest at the time he committed his offenses.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Government's Motion to Dismiss Petition [Doc. 30] of claimant Tammy Nelson is **DENIED.**

Signed: August 14, 2013

Martin Reidinger
United States District Judge

17